**John KONTRABECKI, Defendant–Appellant,**

v.

**Aron M. OLINER, as Chapter 11 Trustee of The Kontrabecki Group Limited Partnership, and Lehman Brothers Holdings, Inc., Plaintiffs–Appellees.**

Civ. No. 04–03130 CRB.
Adversary No. 03–3264 DM.

United States District Court,
N.D. California.

Dec. 13, 2004.

Peter J. Benvenutti, Heller, Ehrman, White & McAuliffe LLP, San Francisco, CA, for Plaintiffs–Appellees.

Dean M. Gloster, Farella Braun & Martel LLP, San Francisco, CA, for Defendant–Appellant.

## OPINION

BREYER, District Judge.

John Kontrabecki appeals the bankruptcy court's denial of his motion to dissolve a stipulated preliminary injunction.

## BACKGROUND

### A. The Initial Actions of John Kontrabecki

On February 15, 2002, The Kontrabecki Group ("TKG") and Central European Industrial Development Company ("CEIDCO") filed voluntary Chapter 11 bankruptcy. Aron Oliner ("Trustee") was appointed as trustee.

From the time the bankruptcy petition was filed, until Oliner's appointment as trustee, Kontrabecki was the chief executive officer of CEIDCO, which was the sole managing partner of TKG. Kontrabecki was also the fiduciary and responsible person for TKG and CEIDCO in their Chapter 11 cases. By virtue of these positions, on January 13, 2003, Kontrabecki controlled TKG.

When TKG petitioned for bankruptcy, it owned 100% of the issued and outstanding shares of two Polish limited liability companies: Warszawskie Centrum Dystrybucyjne Sp Zo.o ("WDC") and Centrum Biznesu Ozarow Sp Zo.o ("OBC"). On January 13, 2003, WDC and OBC purported to issue new shares to Piotr Kukulka ("Kukulka"). As a result of these share dilution transactions, Kukulka acquired control over fifty-three percent (53%) of WDC and ninety-two percent (92%) of OBC, thereby diluting the ownership of the debtor, TKG.

After extensive hearings, the bankruptcy court found that there was no genuine dispute as to the fact that Kontrabecki caused the WDC and OBC "share dilution transactions to occur, and did so intentionally." The bankruptcy court further found that, at the time Kontrabecki authorized the votes to issue new shares and waive TKG's preemptive rights, he was "aware of TKG's bankruptcy case, had actual knowledge of the automatic stay of 11 U.S.C. section 362 applicable to TKG and its bankruptcy estate, and was quite familiar with bankruptcy proceedings."

### B. The Temporary Restraining Order and Preliminary Injunction

A creditor, Lehman Brothers Holdings, Inc. ("Lehman"), and Trustee filed an adversary proceeding in the CEIDCO/TKG bankruptcy case and moved for a TRO. Kontrabecki advised the court that he did not oppose an injunction "requiring him to take all necessary actions to effect an unwinding of the equity transaction and to return to the debtors' estate a 100% interest in the Polish subsidiaries." Feb. 13, 2003 Statement of Partial Non–Opposition to Joint Emergency Motion for TRO at 5. On February 14, and as corrected February 18, the bankruptcy court issued a Temporary Restraining Order and Preliminary Injunction ("TRO/PI"). The TRO/PI provides, in Paragraph 2, that:

John Kontrabecki, and all persons under his direction or control, are hereby directed forthwith to

(a) take all steps necessary to immediately confirm that the issuance of additional shares of stock by WDC and OBC purportedly authorized by the shareholder action of TKG taken on or about January 13, 2003 was void ab initio and of no effect in Poland;

(b) instruct Defendant Piotr Kukulka to return said shares for cancellation or other appropriate action under Polish law and not to exercise any rights in respect thereof;

(c) take all steps available to him to immediately reverse, or otherwise cancel the effect of, the Polish registration of those shares, on or before February 27, 2003; and

(d) forward to Piotr Kukulka, Brian Burrough and other employees of WDC and OBC written instructions, prepared by the Trustee, to recognize the authori-

ty of the Boards of Managers of WDC and OBC appointed by the Trustee.

*Id.* at 4. Kontrabecki stipulated and agreed to entry of the TRO/PI.

## C. The Initial Contempt Finding

The share dilution transaction was not unwound and Lehman moved for a finding of contempt. The bankruptcy court held several hearings on the matter. Kontrabecki invoked the Fifth Amendment and refused to answer all questions on the transactions and his discussions with Kukulka.

Before Kontrabecki put on his defense to the motion for coercive contempt sanctions, he made a Motion for Judgment. In denying that motion, the bankruptcy court found that "there's sufficient evidence for both the control of the Polish subsidiaries and Mr. Kukulka and also that Mr. Kontrabecki has failed to . . . use his best efforts to comply with the Court's extant orders . . . ."

On June 9, 2003, after Kontrabecki presented his case, the bankruptcy court found "that plaintiffs have established Kontrabecki's contempt by clear and convincing evidence but they have not established that coercive sanctions are appropriate."

## D. The Coercive Contempt Order

In August, 2003, Lehman filed a new motion for coercive sanctions. On September 22, 2003, the bankruptcy court issued a written order finding Kontrabecki in contempt of the February 14, 2003 TRO/PI. The order specifically directed that:

2. Kontrabecki is ordered, on or before 4:30 p.m. Pacific Daylight Time on October 7, 2003 to cause Piotr Kukulka ("Kukulka"), on behalf of [WDC] and [OBC]:
(a) to revest the bankruptcy estate of TKG with 100% ownership and control of WDC and OBC pursuant to the terms

and conditions described as "Option 3" in the letter from . . . Oliner ("Trustee") to Dean Gloster dated June 27, 2003; or

(b) to transfer to the TKG estate, without placing any conditions upon Lehman or the Trustee with respect to such transfer, all stock of WDC and OBC issued to Kukulka, accompanied by revesting the TKG estate with 100% ownership and control of WDC and OBC, Kukulka's resignation from the management of WDC and OBC, dismissal of the bankruptcy petitions Kukulka caused WDC and OBC to file in Poland, and dismissal of all lawsuits or other proceedings Kukulka has initiated in Poland against Lehman or TKG relating in any way to any interests in the stock or assets of WDC or OBC, or WDC's or OBC's liabilities to or claims against Lehman, including, but not limited to, the proceedings Kukulka initiated seeking to place caveats on Lehman's mortgages on WDC and OBC; or

(c) cause 100% ownership and control of WDC and OBC to be revested in the TKG estate in a manner otherwise acceptable to the Trustee and Lehman.

*Id.* at 2–3.

Having set a deadline for Kontrabecki to purge his contempt, the bankruptcy court established a schedule for imposing escalating financial sanctions and incarceration. The bankruptcy court also advised Kontrabecki that he could file a written submission with the court asserting that his compliance with paragraph 2 is impossible. *Id.* at 4.

Hearings were subsequently held on Kontrabecki's impossibility defense. Following three days of hearings, the bankruptcy court found that Kontrabecki "has not shown that he has no control and no ability to influence Mr. Kukulka." Court's Ruling on Matters from the Telephonic

Conference of October 7, Adversary Proceeding No. 03–3264, October 20, 2003 at 5.

Kontrabecki appealed the contempt order to this Court. The Court denied the appeal on the ground that the civil contempt order was an interlocutory order not subject to appeal as of right, and that it should not exercise its discretion to grant leave to appeal. Kontrabecki has appealed that order to the Ninth Circuit.

**E. The Increase in Coercive Sanctions**

In March 2004, Lehman Brothers filed in the bankruptcy court a motion for an increase in the coercive sanctions. The bankruptcy court conducted an evidentiary hearing over several days. On May 24, the court announced its oral findings on the motion to increase. The court made new findings with respect to Kontrabecki's ability to comply with the court's prior orders, including his control of Kukulka, and found new instances of contempt. Rather than immediately imposing increased sanctions, the court offered Kontrabecki the opportunity to arrange a meeting among Kontrabecki, Lehman and Kukulka in Poland to facilitate a share unwind. The meeting was scheduled to occur on June 22, 2004. Kukulka did not attend.

The bankruptcy court issued an order on June 29, 2004 based on its May 24 oral findings. The court increased coercive sanctions to $15,000 per day with incarceration to follow on July 27 if Kontrabecki had not yet purged himself of contempt. The court ordered the sanctions to continue until Kontrabecki causes ownership of the shares to be revested pursuant to the terms of the September 22, 2003 Order, or proves that his compliance with the order is impossible.

**F. Kontrabecki's Motion to Dissolve the Injunction**

A few days later Kontrabecki filed in the Ninth Circuit an unsuccessful emergency motion to stay the contempt sanctions. After that was denied, Kontrabecki filed in the bankruptcy court the motion that is at issue on this appeal: Motion to Dissolve or Modify Injunction (the "motion to dissolve"). The bankruptcy court denied Kontrabecki's motion. The court ruled that since a finding of contempt had been made, Kontrabecki bore the burden of proving impossibility of compliance and he had not met that burden. The court also rejected Kontrabecki's argument that the court had improperly converted the injunction into a turnover order, that is, an order requiring Kontrabecki to return property to the estate. Finally, the court granted Lehman's motion to exclude Kontrabecki's declaration on the ground that at his deposition Kontrabecki had refused to testify as to certain relevant facts.

Kontrabecki thereafter unsuccessfully moved this Court to stay the bankruptcy court's order denying Kontrabecki's motion to dissolve pending Kontrabecki's appeal of the motion to dissolve. He also unsuccessfully sought a stay of the order in the Ninth Circuit.

Now pending before the Court is Kontrabecki's appeal of the bankruptcy court's Order denying Kontrabecki's motion to dissolve.

**DISCUSSION**

**A. Jurisdiction**

■ The first issue is whether the Court has jurisdiction to hear this appeal. District courts have jurisdiction to hear appeals of final judgment orders and decrees issued by a bankruptcy court. *See* 28 U.S.C. § 158(a)(1). They also have discretion to hear appeals of other interlocu-

tory orders and decrees. *See* 28 U.S.C. § 158(a)(3). Kontrabecki concedes that the bankruptcy court's denial of his motion to dissolve is an interlocutory appeal. He nonetheless contends that he has the *right* to appeal because 28 U.S.C. section 1292(a)(1), giving parties a right to appeal district court orders with respect to injunctions, applies to appeals of bankruptcy injunction orders pursuant to 28 U.S.C. section 158(c)(2).

Section 158(c)(2) provides that an appeal under section 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." The Third Circuit has stated, in dicta, that bankruptcy orders regarding injunctions are appealable as of right pursuant to 28 U.S.C. section 1292(a)(1). *In re Professional Ins. Mgmt.*, 285 F.3d 268, 282 n. 16 (3d Cir.2002).

The Court need not decide whether it must hear Kontrabecki's appeal, because under the discretion vested in the Court pursuant to section 158(a)(3), the Court determines that it should hear the appeal. Since parties have a *right* to appeal a district court order denying a motion to dissolve an injunction, there is no reason a district court, sitting as an appellate court, should not hear an appeal of the same order from a bankruptcy court. As a district court in Texas has observed:

> Although it is recognized that leave to appeal is discretionary, it is determined that appeal should be allowed in this instance. As a policy matter, the rulings of a non-Article III bankruptcy court should not be more insulated from appellate review than the rulings of an Article III district court. The wiser exercise of discretion is to apply § 1292(a)(1) by analogy and allow the appeal of the preliminary injunction.

*In re Reserve Production, Inc.*, 190 B.R. 287, 289–90 (E.D.Tex.1995). The Court agrees.

## B. The Merits of the Appeal

### 1. Standard of Review

Kontrabecki appeals the denial of his motion to dissolve the preliminary injunction. In considering the appeal, the Court does not review the "propriety of the underlying order, but limit[s] [its] review to the motion to dissolve." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir.2000). Kontrabecki "bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Id.* The lower court's findings of fact are reviewed for clear error and its legal conclusions de novo. *See id.*

### 2. The motion to dissolve

Kontrabecki argues that since the injunction was initially issued in February 2003, there has been a significant change in fact: namely, the bankruptcy court's "transmuting" the injunction into a turnover order under 11 U.S.C. section 542(a). This "change in fact" warrants dissolution of the injunction, argues Kontrabecki, because a turnover order is not authorized under the Supreme Court's decision in *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948).

Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease ... shall deliver to the trustee, and account for, such property or the value of such property." The obligation to deliver the estate's property to the trustee arises upon the filing of the bankruptcy petition; neither the debtor nor the trustee have to first demand return of the property or file suit for its return. *See In re Del Mission Ltd.*, 98 F.3d 1147, 1151

(9th Cir.1996). Indeed, retention of such property is a violation of the automatic stay. *See id.* If a possessor fails to return such property, the trustee may initiate an adversary proceeding against the possessor for return of the property. *See In re Wheeler Technology, Inc.*, 139 B.R. 235, 239–40 (9th Cir. BAP 1992).

In this case, the complaint filed against Kontrabecki by the Trustee and Lehman included a cause of action for a turnover order. The preliminary injunction, however, was not based on the turnover claim; instead, it was based on a broader claim arising from Kontrabecki's violation of the automatic stay by transferring the shares in the first place. As Lehman has acknowledged, a turnover order would not have been proper at the time the injunction was issued because at that time the record did not show that Kontrabecki "controlled Kukulka" and thus controlled the property.

In September 2003, however, the bankruptcy court specifically found that Lehman had proved by *clear and convincing evidence* that Kontrabecki controlled Kukulka and therefore Kontrabecki had not taken all steps available to return the property to the bankruptcy estate. The court therefore imposed coercive sanctions and specifically ordered Kontrabecki to unwind the transaction through his control of Kukulka. Kontrabecki argues that this ruling transmuted the injunction into a turnover order and that the turnover order is not authorized. Accordingly, the injunction, he claims, must be dissolved.

### a. No changed circumstances warrant dissolution of the Feb. 2003 injunction

The preliminary injunction required Kontrabecki to take all steps available to him to effectuate the return of the property (ownership of the Polish subsidiaries) to the estate. He does not challenge the bankruptcy court's finding that he has not complied with that requirement; nor does he argue that circumstances have changed such that he should not be required to take all available steps to effectuate the unwind. Rather, he argues that the bankruptcy court's finding that he controlled Kukulka and thus could effectuate the return of the property was unlawful. He thus, in essence, challenges the September 2003 order and subsequent orders enforcing that order—challenges which the Court previously ruled it does not have jurisdiction to hear.

In any event, Kontrabecki has not proffered any change in circumstance that would warrant dissolution of the February 2003 injunction requiring him to use all available efforts to unwind the transaction. If the court's September 2003 coercive sanctions order was a turnover order, and if such an order was impermissible, then Kontrabecki's argument might warrant vacating the September 23 order (if the Court had jurisdiction to do so). But it is not a reason for dissolving the order that he "take all steps available to him" to effectuate an motion to dissolve the February 2003 preliminary injunction must be affirmed.

### b. The court's September 23 order was not a "turnover order"

Kontrabecki's appeal fails for a second reason: the September 23 order was not a turnover order. The court never invoked 11 U.S.C. section 542(a). The court simply found Kontrabecki in contempt for not taking all steps available to him to effectuate the unwind and, more specifically, found that Lehman had proved by clear and convincing evidence that Kontrabecki had available to him steps that would cause ownership of the Polish subsidiaries to revest with the debtor. He therefore speci-

fied that in order for Kontrabecki to purge his contempt and the coercive sanctions, he had to unwind the transaction; that is, take the steps that the court found are available to him to unwind the fraudulent transaction. The court has always left open the possibility that if Kontrabecki can prove that he cannot comply with that order, the contempt will be lifted. *See FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir.1999) ("A party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt.").

### c. Any alleged "turnover order" was not improper

Kontrabecki's appeal fails for a third reason: assuming the September 23, 2003 order should be considered a section 542(a) "turnover order," such order was warranted by the facts found by the bankruptcy court. Kontrabecki relies on the Supreme Court's 1948 decision in *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948) to support his assertion that the bankruptcy court could not order him to unwind the transaction. In *Maggio*, the bankruptcy court ordered the debtor to return certain property. The court's order, however, was based solely on evidence that the debtor possessed the property several months before the debtor declared bankruptcy. The evidence in the record at the time of the court's turnover order demonstrated that the debtor no longer possessed the property; indeed, the court of appeals had specifically noted that the debtor *could not comply with the order*. *Id.* at 59, 68 S.Ct. 401. Nonetheless, the court of appeals felt constrained by the law to affirm the contempt. The Supreme Court reversed:

> Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt, but no such acts, however repre-

hensible, warrant issuance of an order which creates a duty impossible of performance, so that punishment can follow.

333 U.S. at 64, 68 S.Ct. 401. The Court explained that proof of the debtor's one time possession, supplemented by a presumption that he continued to possess the property, were insufficient to support the Trustee's burden of showing present possession by clear and convincing evidence. *Id.* at 60, 68 S.Ct. 401.

Here, in contrast to *Maggio*, the bankruptcy court found that Kontrabecki presently has the ability to cause the unwind through his control of Kukulka. The court did not rely on any evidence as to events that occurred before the violation of the automatic stay, and he did not rely on a presumption; instead, the court found that Lehman had proved by clear and convincing evidence that Kontrabecki had not taken all steps available to him because Kontrabecki controls Kukulka and can therefore effectuate an unwind. This finding was reaffirmed as recently as September of this year. *See* September 28, 2004 Order at 4 n. 3 ("Kontrabecki's Request argues that 'the evidence demonstrates that [he] *cannot* cause the share transfer to occur.' The court has found otherwise.").

Moreover, *Maggio* does not suggest, as Kontrabecki contends, that one must physically possess property in order for a court to order return of the property. The Supreme Court's use of the word "possess" must be considered in the context of the case; that is, the issue was whether the order was proper in light of the undisputed evidence that he did not possess the property. No one argued that the debtor controlled the property even though he did not possess it. Further, *Maggio* was decided before the adoption of 11 U.S.C. section 542(a) which specifically requires

one in "control" of property to return it to the estate. The bankruptcy court found by clear and convincing evidence that Kontrabecki exercises control of Kukulka and therefore controls the property.

#### d. Kontrabecki's fairness arguments fail

Finally, Kontrabecki also argues that the preliminary injunction should be dissolved because the bankruptcy court's recent evidentiary rulings are "unfair." He points to the court's refusal to consider a "deposition" of Kukulka and refusal to consider a declaration of Kontrabecki. The court refused to consider this evidence, however, because it found it lacked probative value in light of how the deposition was transcribed in the case of Kukulka, and because of Kontrabecki's refusal to answer certain questions at his deposition. Moreover, these again are challenges to the orders finding Kontrabecki in contempt—they are not challenges to the continuing propriety of the preliminary injunction.

### CONCLUSION

Kontrabecki has not identified changed circumstances that warrant dissolution of the stipulated preliminary injunction. The bankruptcy court's denial of the motion to dissolve is **AFFIRMED**.

**IT IS SO ORDERED.**